# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1510

_____

United States of America,     *
    *
         Appellant,     *
    *    Appeal from the United States
     v.     *    District Court for the
    *    District of Nebraska.
Delano Eugene Maxwell;     *
Hassan Majied,     *
    *
         Appellees.     *

_____

Submitted: October 20, 2009
Filed: January 4, 2010

_____

Before WOLLMAN, MURPHY, and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The government appeals the district court's order reducing Delano Maxwell's and Hassan Majied's sentences to 240 months' imprisonment. We hold that the retroactive amendments to the cocaine base sentencing guidelines permitted sentence modifications, but that the district court lacked authority to impose sentences below the amended guidelines range. See 18 U.S.C. § 3582(c)(2); U.S. Sentencing Guidelines Manual §§ 1B1.10, 2D1.1, supp. to app. C, amends. 706, 711, 713 (2008). We thus vacate the sentences and remand for further proceedings consistent with this opinion.

## I. Background

In 1992, Maxwell and Majied were convicted of conspiracy to distribute and possession with intent to distribute fifty grams or more of cocaine base, distribution of cocaine, and distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. Applying the United States Sentencing Guidelines (guidelines), the district court determined that Maxwell's total offense level was 44, his criminal history category was I, and his resultant guidelines sentence was life imprisonment. The district court found that Majied's total offense level was 42, his criminal history category was II, and his guidelines range was thus 360 months' to life imprisonment.

The district court departed downward from the then-mandatory guidelines range, finding that the guidelines 100:1 quantity ratio between cocaine powder and cocaine base (crack cocaine) disparately impacted African Americans and that the disparate impact "was not contemplated by Congress nor was it considered by the Sentencing Commission in developing the guideline ranges for users of crack cocaine." United States v. Maxwell, 25 F.3d 1389, 1400 (8th Cir. 1994) (quoting the district court's statement of reasons for departure). The district court sentenced Maxwell and Majied to 240 months' imprisonment.

On appeal by the government, we vacated the sentences and remanded for resentencing, holding that "while [the] racially disparate impact [of the ratio] may be a serious matter, it is not a matter for the courts, and, therefore, not a basis upon which a court may rely to impose a sentence outside of the applicable Guidelines range." Id. at 1401 (internal citation omitted). At resentencing in 1995, Maxwell and Majied again moved for downward departures, which the district court reluctantly denied,

citing its lack of authority to depart. The district court imposed guidelines-range sentences of 360 months' imprisonment,[1] and Maxwell and Majied appealed.

We affirmed the sentences, agreeing with the district court's conclusion that it had no authority to depart from the guidelines range.

> In the end, nothing has changed since our prior opinion in this case: The 100:1 ratio's disparate impact on black defendants, which is without question a disturbing fact, is not a basis upon which a court may rely to depart downward. . . . It is not for us to decide whether the 100:1 ratio is wise or equitable; that is a question for the popularly chosen branches of government. They have made their view quite plain.

United States v. Lewis, 90 F.3d 302, 306 (8th Cir. 1996) (internal citations omitted).

The legal landscape related to sentencing proceedings under 18 U.S.C. § 3553 has changed significantly since our affirmance of Maxwell's and Majied's 360-month sentences. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court determined that the application of mandatory sentencing guidelines, under which the sentencing court rather than the jury found facts that established the sentencing range, violated the Sixth Amendment. To remedy the constitutional defect, the Court severed and excised §§ 3553(b)(1) and 3742(e) to render the guidelines effectively advisory. Id. at 245. As a result, when a district court conducts full sentencing proceedings—whether in an initial sentencing or in a resentencing after the first sentence was vacated for error—it is no longer bound by the sentencing range prescribed by the guidelines. More recently, the Supreme Court has held that district courts may vary from the crack cocaine guidelines based on a policy disagreement with the crack-powder sentencing disparity, Kimbrough v. United States, 552 U.S. 85

---

[1]The district court granted Maxwell's motion to reconsider the two-level obstruction of justice enhancement, which brought Maxwell's total offense level to 42 and his guidelines range to 360 months' to life imprisonment.

(2007), and may replace the guidelines 100:1 quantity ratio with a ratio the courts deem appropriate, Spears v. United States, 129 S. Ct. 840 (2009) (per curiam).

The sentencing guidelines related to crack cocaine have also changed. Amendment 706 revised the drug quantity table set forth at guideline § 2D1.1, reducing by two levels the base offense level for offenses involving crack cocaine. The amendment became effective in November 2007, and the Sentencing Commission subsequently voted to make it retroactive. Amendment 706 was then added to the list of amendments covered by the policy statement in guideline § 1B1.10, "Reduction in Term of Imprisonment as a Result of Amended Guideline Range."

In March 2008, Maxwell and Majied requested that their sentences be reduced to time served, based on 18 U.S.C. § 3582(c)(2) and the amendments to the crack cocaine guidelines. The government opposed any reduction beyond the two-level reduction authorized by Amendment 706. The district court determined that the amended guidelines range for both Maxwell and Majied was 292 to 365 months' imprisonment.[2] The district court concluded that the sentencing disparity between powder and crack cocaine remained unconscionable and sentenced Maxwell and Majied to 240 months' imprisonment, the same terms of imprisonment first pronounced in 1993 and then vacated on appeal.

---

[2]The district court's sentencing orders state that Maxwell's and Majied's modified total offense levels are 34, that their criminal history categories are I, and that their amended guidelines ranges are 292 to 365 months' imprisonment. This appears to be an unintentional error. Both defendants' base offense levels should have been reduced from 36 to 34, reducing their total offense levels from 42 to 40. With a criminal history category of I, Maxwell's amended guidelines range is 292 to 365 months' imprisonment. Majied's criminal history category, however, should have remained II, resulting in an amended guidelines range of 324 to 405 months' imprisonment.

-4-

## II. Discussion

Maxwell and Majied contend that the district court had full sentencing authority and thus acted within its discretion when it sentenced them to a term of imprisonment below the amended guidelines range. Sentence modification proceedings under 18 U.S.C. § 3852(c)(2), however, do not constitute full resentencings. United States v. Starks, 551 F.3d 839, 843 (8th Cir.) (citing guideline § 1B1.10(a)(3)), *cert. denied*, 129 S. Ct. 2746 (2009); see also Dillon v. United States, 572 F.3d 146 (3d Cir.), *cert. granted*, 2009 WL 2899562 (Dec. 7, 2009) (presenting the following question: whether the guidelines "are binding when a district court imposes a new sentence pursuant to a revised guideline range under 18 U.S.C. § 3582"). Section 3582(c)(2) and guideline § 1B1.10 limit a district court's authority to reduce sentences following the retroactive reduction of a guidelines sentencing range. We have held that those limitations remain constitutional and enforceable. Starks, 551 F.3d at 843; see also United States v. Clark, 563 F.3d 722, 724 (8th Cir. 2009) (rejecting the defendant's Booker- and Kimbrough-based challenges to the district court's application of § 3582(c)(2)).

Section 3582(c)(2) authorizes a sentence reduction only to the extent it "is consistent with applicable policy statements issued by the Sentencing Commission." As noted above, guideline § 1B1.10 is the policy statement applicable to the adjusted crack cocaine sentencing guidelines. Section 1B1.10(b)(2)(A) provides that in the case of a defendant who was sentenced under the mandatory sentencing guidelines and within the guidelines range, the court shall not reduce a defendant's sentence to a term of imprisonment below the bottom of the amended guidelines range, except as provided in § 1B1.10(b)(2)(B). Section 1B1.10(b)(2)(B) provides that "[i]f the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing," the district court may grant a reduction from the amended guidelines range that is comparable to the original reduction. See generally United States v. Higgins, 584

F.3d 770 (8th Cir. 2009) (discussing the district court's application of § 1B1.10(b)(2)(B)).

Section 1B1.10(b)(2)(A) applies to Maxwell's and Majied's sentence reductions because their 360-month sentences, imposed after remand, were the first legal sentences imposed and thus constitute the "original term[s] of imprisonment." See 18 U.S.C. § 3742(b) (authorizing the government to appeal an otherwise final sentence if the sentence was imposed in violation of law). In Maxwell, we determined, as a matter of law, that the racially disparate impact was not a circumstance upon which the district court could rely to depart downward from the mandatory guidelines range. 25 F.3d at 1401. We vacated the illegal sentences, remanded the case, and thereafter the district court imposed legal sentences.[3] See id. (vacating and remanding sentences); Lewis, 90 F.3d at 306 (affirming sentences). Those 360-month sentences were within the mandatory guidelines range, and thus § 1B1.10(b)(2)(A) and Amendment 706 authorized the district court to reduce Maxwell's and Majied's base offense levels by two levels and sentence them within the amended guidelines range.

We disagree with Maxwell's and Majied's alternative argument that their original terms of imprisonment were the 240-month sentences pronounced in 1993 and thus § 1B1.10(b)(2)(B) authorized the district court to reinstate those sentences. Although the 240-month sentences were the first sentences to be pronounced, those sentences were illegal and vacated, meaning that the sentences were invalidated, nullified, or made void. See Black's Law Dictionary 1688 (9th ed. 2009) (definition of vacate). "A judgment vacated on appeal is of no further force and effect." Riha v. Int'l Tel. & Tel. Corp., 533 F.2d 1053, 1054 (8th Cir. 1976) (per curiam); see also

---

[3]Booker did not apply retroactively to Maxwell and Majied, whose convictions and sentences became final before Booker was decided. See United States v. Never Misses A Shot, 413 F.3d 781, 783-84 (8th Cir. 2005) (per curiam) (holding that "Booker does not apply to criminal convictions that became final before the rule was announced and thus does not benefit movants in collateral proceedings").

Creighton v. Anderson, 922 F.2d 443, 449 (8th Cir. 1990) ("A vacated opinion has no further force and effect."). Accordingly, the vacated sentences could not serve as the sentences from which the district court could apply the retroactive sentence reduction.

We recognize that courts often use the term "original sentence" to refer to the first sentence pronounced, regardless of its disposition on appeal. But the cases cited by the dissent did not give legal effect to an "original sentence" that was later vacated.[4] Similarly, the crack cocaine sentence reduction cannot be calculated from an illegal, nullified sentence, even though it was the first sentence pronounced.

The judgment is vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.

BYE, Circuit Judge, dissenting.

I would affirm the district court's order reducing Delano Maxwell's and Hassan Majied's sentences to 240 months' imprisonment because such reductions are authorized by section 1B1.10(b)(2)(B) of the Sentencing Guidelines. I therefore respectfully dissent.

As noted by the majority, the Guidelines permit a sentence reduction under 18 U.S.C. § 3582(c) – beyond the two-level reduction authorized by Amendment 706 – if "the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.10(b)(2)(B). When Maxwell and Majied were first sentenced in July 1993, the district court originally imposed sentences of 240 months, less than the guideline range applicable to each defendant at the time (i.e., life imprisonment for Maxwell and 360 months-to-life for Majied).

---

[4]The vacated sentence in United States v. Sanders, 452 F.3d 572 (6th Cir. 2006) was void before the defendant was resentenced to the "original term of imprisonment."

As a consequence, when the two men filed motions for sentence reductions under § 3582(c), the district court was authorized to grant a reduction comparable to the original reduction. See id. (indicating a "reduction comparably less than the amended guideline range . . . may be appropriate" when the original term of imprisonment is below the guideline range applicable at the time of sentencing).

The majority concludes the 360-month sentences the two men received upon resentencing in November 1995 constituted their "original" terms of imprisonment, rather than the 240-month sentences the district court first imposed in July 1993. I disagree for several reasons. First, the sole rationale provided for this otherwise unsupported conclusion is flawed. The majority concludes the November 1995 resentencings were the original terms of imprisonment because the original sentences imposed in July 1993 were subsequently vacated by our court. See United States v. Maxwell, 25 F.3d 1389, 1401 (8th Cir. 1994) (vacating the original 240-month terms of imprisonment and remanding for resentencing). The fact that the 240-month sentences were vacated did not change them into something other than the "original" terms of imprisonment, or more aptly, nothing at all: it simply meant the original terms of imprisonment had been vacated. "Original" means "[p]receding all others in time: FIRST." Webster's New College Dictionary 792 (3d ed. 2008). Whether subsequently vacated or not, the "original" sentences were still the first sentences imposed; they necessarily preceded the resentencings. It is axiomatic that there could not be resentencings without the vacation of the "original" terms of imprisonment.

Second, the manner in which courts routinely refer to an original sentence, even when subsequently vacated on appeal, supports my conclusion the "original" terms of imprisonment were the 240-month sentences imposed by the district court in July 1993, not the 360-month terms imposed upon resentencing in November 1995. For example, in United States v. Sanders, 452 F.3d 572 (6th Cir. 2006), the defendant was originally sentenced to thirty-seven months. The sentence was vacated on appeal and the defendant resentenced to 188 months. The 188-month sentence was also vacated

on appeal and the defendant resentenced to 180 months. The defendant thereafter filed a motion pursuant to 28 U.S.C. § 2255, which the district court found meritorious, thereby sentencing the defendant for a fourth time, imposing the original term of thirty-seven months. The government appealed. In describing the sequence of events which occurred, the Sixth Circuit described the thirty-seven month sentence as the "original term of imprisonment." Id. at 584 ("The court then resentenced Sanders to the *original term of imprisonment* of thirty-seven months and ordered him released from custody[.]") (emphasis added).

Similarly, in United States v. Singletary, 458 F.3d 72 (2d Cir. 2006), a case involving an original sentence subsequently reversed on appeal, the court referred to the vacated sentence as the "original sentence," rather than the sentence the defendant received upon resentencing. Id. at 77. See also Andrews v. United States, 373 U.S. 334, 336 (1963) (referring to a sentence reversed on appeal as the "original sentence."); Yates v. United States, 356 U.S. 363, 366 (1958) (same); United States v. Quintieri, 306 F.3d 1217, 1230 (2d Cir. 2002) (discussing sentences vacated on appeal and stating "even when a remand is limited, an issue may be raised if it arises as a result of events that occur after the original sentence."); United States v. Regalado, 518 F.3d 143, 149 (2d Cir. 2008) ("[T]the court should vacate the original sentence and resentence the defendant.").

Our court regularly refers to a sentence reversed on appeal as the "original sentence," and in doing so distinguishes the "original sentence" from the "resentenc[ing]." United States v. Collier, 581 F.3d 755, 757-58 (8th Cir. 2009); see also United States v. Spudich, 510 F.3d 834, 835-36 (8th Cir. 2008) ("[W]e vacated Spudich's original sentence"); United States v. House, 501 F.3d 928, 930 (8th Cir. 2007) ("When Vallejo's conviction was reversed on appeal, both the prison term and the supervised release term of his original sentence were set aside."); United States v. Lalley, 317 F.3d 875, 876 (8th Cir. 2003) ("[W]e reversed Lalley's original sentence"); United States v. Allery, 175 F.3d 610, 615 (8th Cir. 1999) (vacating a sentence and

remanding for resentencing, stating "[n]one of the other considerations that the trial court used in arriving at its original sentence may properly be brought to bear in the resentencing.").

Indeed, the other two members of this panel have each authored opinions referring to sentences vacated on appeal as the "original sentence." United States v. Bueno, 549 F.3d 1176, 1180 (8th Cir. 2008) (authored by Judge Wollman); United States v. Aguilar, 512 F.3d 485, 487 n.2 (8th Cir. 2008) (authored by Judge Murphy).

Furthermore, certain rights enjoyed by a criminal defendant (and concomitant obligations of the district court) apply only to the "original" sentencing proceeding, not to any subsequent resentencings triggered by a reversed sentence. E.g., United States v. Jeross, 521 F.3d 562, 585 (6th Cir. 2008) (involving a sentence reversed on appeal and remanded for resentencing, and holding the defendant's right of allocution only "applies to the *original sentence* and not to the subsequent resentencing." (quoting Pasquarille v. United States, 130 F.3d 1220, 1223 (6th Cir. 1997))) (emphasis added).

Third, the majority ignores the context in which "original term of imprisonment" is used in § 1B1.10. See, e.g., United States v. Archambault, 767 F.2d 402, 404 (8th Cir. 1985) (indicating the meaning of a term must be determined from the context in which it is used). The manner in which "original term of imprisonment" is used elsewhere in § 1B1.10 supports my view. One of the guideline's Application Notes provides:

> The court may consider post-sentencing conduct of the defendant that occurred *after imposition of the original term of imprisonment* in determining: (I) Whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction, but only within the limits described in subsection (b).

U.S.S.G. § 1B1.10 cmt. n.1(B)(iii) (emphasis added).  Let us assume for the sake of argument that one of the two men here (Maxwell) did not appeal his original sentence while the other (Majied) did.  Thus, only Majied's sentence would have been vacated on appeal.   Under the majority's interpretation of the term "original term of imprisonment," Maxwell's original sentence would have been imposed in July 1993, while Majied's original sentence would have been imposed over two years later in November 1995.  Further assume both men were exemplary prisoners entitled to have their post-sentencing rehabilitative conduct considered as the grounds for a sentence reduction.

According to the majority, the district court could consider *all* of Maxwell's post-sentencing conduct because it occurred *after* imposition of his original term of imprisonment in July 1993, but could not consider any of Majied's exemplary conduct which occurred between July 1993 and November 1995 because his "original term of imprisonment" would not have been imposed until November 1995.  Defendants whose sentences were never appealed, or appealed but upheld, would be eligible to have their entire time of incarceration examined to determine eligibility for a sentence reduction.   On the other hand, defendants whose sentences were appealed and reversed (even in their favor) would have lengthy periods of incarceration time which could not be considered as the basis for a sentence reduction, with the ineligible period determined entirely by happenstance (i.e., the length of time the appeal was pending, plus the length of time for a district court to schedule a resentencing).  This would be a perverse result, where consideration of post-sentencing rehabilitative conduct would turn on whether a particular defendant's original term of imprisonment was appealed by either party, and the length of time it took to resolve the appeal and schedule a resentencing.

Section 1B1.10 plainly and unambiguously refers to an "original term of imprisonment" as the first imposed upon a defendant at the time of original sentencing, irrespective of whether such a sentence is later vacated on appeal.  Even

-11-

assuming, however, there is some support for the majority's interpretation, at best this renders the term "original term of imprisonment" ambiguous and triggers the rule of lenity, which requires us to construe the term in favor of the defendants and against the government. See United States v. Granderson, 511 U.S. 39, 54 (1994) (finding the phrase "original sentence" ambiguous and applying the rule of lenity in favor of the defendant); United States v. Rodriguez-Arreola, 313 F.3d 1064, 1067 (8th Cir. 2002) (indicating the rule of lenity applies to the Sentencing Guidelines).

The majority's holding is contrary to the meaning of the term "original," contrary to the manner in which courts (including ours) routinely refer to an original term of imprisonment even when vacated on appeal, contrary to the context in which the phrase "original term of imprisonment" is used in § 1B1.10, and inconsistent with the application of the rule of lenity.

I respectfully dissent.

_____