UNITED STATES of America, Appellee,

v.

Quentin SINGLETARY, Defendant–Appellant.

Docket No. 05–6145–CR.

United States Court of Appeals, Second Circuit.

Argued: June 12, 2006.

Decided: July 19, 2006.

Robert G. Smith, Assistant Federal Defender (Jay S. Ovsiovitch, on the brief), Rochester, NY, for Defendant–Appellee.

Bradley E. Tyler, Assistant United States Attorney (Kathleen M. Mehltretter, Acting United States Attorney, on the brief), United States Attorney's Office for the Western District of New York, Buffalo, NY, for Respondents.

Before CABRANES, STRAUB, and HALL, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here whether a presumption of vindictiveness is created by the decision of a sentencing judge, on a remand pursuant to *United States v. Fa-*

*gans,* 406 F.3d 138 (2d Cir.2005), to impose a longer prison term than had been imposed at the original sentencing. At issue is the relation of two doctrines: (1) the rule that, absent newly discovered facts or a change in law, the imposition of a harsher sentence on remand following an appeal creates a presumption that the sentencing court acted vindictively to punish the defendant for appealing the original sentence, *see, e.g., North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Bryce,* 287 F.3d 249 (2d Cir.2002); *see also United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and (2) the advisory nature of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") in the wake of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Defendant Quentin Singletary appeals from an amended judgment of the United States District Court for the Western District of New York (David G. Larimer, *Judge)* entered on November 2, 2005. The amended judgment reflected a new sentence that the District Court imposed pursuant to a *Fagans* remand by this Court following Singletary's appeal of his original sentence, which had been imposed prior to the Supreme Court's decision in *Booker.* The District Court had originally sentenced Singletary principally to 42 months' imprisonment. On the *Fagans* remand, the District Court imposed a sentence principally of imprisonment for 54 months.

On appeal, Singletary challenges his new sentence on two grounds. First, he argues

that under *Pearce* and its progeny, the increased length of imprisonment imposed on remand creates a presumption of vindictiveness on the part of the District Court. Second, he argues that the District Court violated his Sixth Amendment right to trial by jury when, in calculating the appropriate *advisory* sentence under the Guidelines pursuant to *Booker* and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005), it relied on facts neither proven to a jury beyond a reasonable doubt nor admitted by defendant. As we explain below, neither argument is persuasive. Accordingly, we affirm.

## BACKGROUND

The facts material to this appeal are undisputed. Singletary pleaded guilty to the single count of an information charging him with violating 21 U.S.C. § 841(a)(1) by possessing cocaine base ("crack") with the intent to distribute it. Under the plea agreement Singletary signed, he and the Government agreed that his base "offense level" under the Guidelines was 12, his criminal history category was V, and his sentencing range would be 27 to 33 months' imprisonment. The agreement contained the disclaimer that the District Court might not make the same calculations and that Singletary could not withdraw his guilty plea if the District Court imposed a sentence more harsh than that anticipated by the parties.

At the original sentencing hearing, the District Court found that the projected range of 27 to 33 months was correct. It also found, however, that an upward departure was appropriate under U.S.S.G. § 5K2.4.[1] The basis for the upward depar-

---

1. Under U.S.S.G. § 5K2.4,

 [i]f a person was abducted, taken hostage, or unlawfully restrained to facilitate commission of the offense or to facilitate the escape from the scene of the crime, the court may increase the sentence above the authorized guideline range.

 After considering the presentence report prepared by the Probation Department and other evidence, the District Court found *sua sponte* that Section 5K2.4 applied. The Government stated no view on the matter.

ture was that Singletary and three other persons coerced Marshall Jones, a seventeen-year-old boy whom they did not know, into driving them around in his parents' car. Jones testified that while he was alone in the family car, Singletary approached him, demanded that Jones give Singletary's friend "a ride," and appeared to have a weapon.[2] The District Court therefore departed upwardly, adding three levels to the "offense level," with a resulting imprisonment range of 37 to 46 months. The District Court then imposed a sentence principally of 42 months' imprisonment.

Singletary appealed his sentence. Following the Supreme Court's decision in *Booker,* this Court remanded the case to the District Court for resentencing consistent with *Booker* and our decision in *Fagans. See United States v. Singletary,* No. 04–6003 (2d Cir. May 31, 2005).

On remand, the District Court advised the parties that it was again considering upwardly departing from the 27–to–33–month range and that it did not consider its previous sentence of 42 months to be a "cap or ceiling" limiting the new sentence under the advisory Guidelines. Singletary objected, arguing that no sentence above 42 months could be proper. Following briefing and a new sentencing hearing, the District Court sentenced Singletary principally to 54 months' imprisonment. The District Court stated at its October 28, 2005 hearing that

> when the Court considered this previously, it was required pretty much to

consider the sentencing in terms of the then mandatory guidelines. Those guidelines are now advisory. And based on the language in *Booker* . . . and other cases from the Second Circuit since then, the Court is charged now with considering the guidelines, but also determining ultimately what a reasonable sentence should be under Section 3553(a) of Title 18.

Then, after considering on the record various factors—such as Singletary's lengthy criminal record notwithstanding his young age,[3] the seriousness of his carjacking,[4] and a need to deter others from committing similar acts—the District Court explained that in its post-*Booker* discretion, it would impose a non-Guidelines sentence principally of imprisonment of 54 months. This appeal followed.

### DISCUSSION

### I. The District Court's Imposition of Additional Prison Time on Remand Did Not Create a Presumption of Vindictiveness

 Singletary argues that because no new facts before the District Court at resentencing justified an increased sentence, the District Court's imposition of twelve additional months of imprisonment creates a presumption of vindictiveness. He relies principally on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in which the Supreme Court held that

> [i]n order to assure the absence of such a [vindictive] motivation, we have con-

---

**2.** Although Jones testified that he never actually saw Singletary possess a weapon, the District Court found that Singletary's actions were sufficiently intimidating to meet the standard of U.S.S.G. § 5K2.4. We note, as did the District Court, that when police eventually stopped Jones's car and searched it, Singletary was found in possession of a weapon, in addition to the drugs giving rise to this prosecution.

**3.** The District Court noted that the offense of conviction was Singletary's "fourth or fifth felony."

**4.** The District Court admonished Singletary that he had not taken "just a joy ride," but rather had "terroriz[ed] this young man that you didn't even know, you had no beef with."

cluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726, 89 S.Ct. 2072; *see Goodwin,* 457 U.S. at 374, 102 S.Ct. 2485 (stating that the *Pearce* Court "applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence"); *see also Bryce,* 287 F.3d at 256–57 (" '[A] sentencing authority may justify an increased sentence by affirmatively identifying relevant *conduct or events* that occurred subsequent to the original sentencing proceedings.' " (quoting *Wasman v. United States,* 468 U.S. 559, 572, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984))). The District Court on remand imposed twelve more months of imprisonment than it did initially, even though there had been no apparent change in defendant's circumstances or in the court's understanding of the record of his crime. Defendant argues that the Pearce presumption of vindictiveness thereby arose. We disagree.

 The Supreme Court has clarified that the *Pearce* presumption "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial" or at resentencing. *Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). The presumption exists to prevent not "enlarged sentences after a new trial" but rather "vindictiveness of a sentencing judge." *Id.* Recogniz-

ing that "the *Pearce* presumption may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct," the Court has limited application of the presumption "to circumstances where its objectives are thought most efficaciously served." *Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (internal quotation marks and citation omitted). Accordingly, before a defendant may invoke the *Pearce* presumption, there must be a "reasonable likelihood that the increase in sentence is the product of *actual vindictiveness* on the part of the sentencing authority." *Id.* (emphasis added and citation and quotation marks omitted). "Where there is no such reasonable likelihood, the burden remains on the defendant to prove actual vindictiveness." *Id.* at 799–800, 109 S.Ct. 2201 (citing *Wasman,* 468 U.S. at 569, 104 S.Ct. 3217).

We read *Pearce* and its progeny to require a preliminary analytical step before a reviewing court can determine whether the presumption of vindictiveness compels a reviewing court to vacate an increased sentence. This first step, which defendant has elided in his argument, is to determine whether the presumption even applies. In that regard we look to see if it is reasonably likely that the District Court imposed the increased sentence because it was actually being vindictive. *Id.* at 799, 109 S.Ct. 2201. If we find a "reasonable likelihood" that actual vindictiveness motivated the increased sentence, we then apply the *Pearce* presumption, and "the sentencing authority . . . must rebut the presumption that an increased sentence . . . resulted from vindictiveness." *Wasman,* 468 U.S. at 569, 104 S.Ct. 3217. Where the record shows that vindictiveness was not reasonably likely, then the presumption does not apply,[5] and "the defendant must affirmatively prove actual vindictiveness." *Id.*

---

**5.** *Cf., e.g., Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)

■ A significant intervening change in law, or a changed understanding of the law, can itself justify an increased sentence on remand, thereby precluding application of the *Pearce* presumption because it is not reasonably likely that vindictiveness motivated the increased sentence. The Supreme Court's decision in *Booker* caused such a change by permitting district courts to consider sentences that otherwise would have been impermissible under the legal regime in force at the time of the original sentencing. Two of our sister circuits have held that because *Booker* fundamentally altered the law pursuant to which defendants are sentenced, that alteration of the law, standing alone, rendered a challenge based on vindictiveness highly implausible. *See United States v. Williams,* 444 F.3d 250, 254 (4th Cir.2006) (holding that "there is no vindictiveness in a post-*Booker* sentence that exceeds the original pre-*Booker* sentence solely because *Booker* changed the law"); *see also United States v. Goldberg,* 406 F.3d 891, 894 (7th Cir. 2005) *("Booker* brought about a fundamental change in the sentencing regime. The guidelines, mandatory when [defendant] was sentenced, are now advisory. Were he to be resentenced, it would be under a different standard, one that would entitle the judge to raise or lower the sentence, provided the new sentence was justifiable under the standard of reasonableness. No inference of vindictiveness would arise from the exercise of the judge's new authority." (internal citations omitted)).

Where an original sentence involves *no* upward departure and a more severe non-Guidelines sentence is imposed on a remand prompted by *Booker,* it is clear that the change in law initiated by *Booker* must

be considered a sufficiently significant legal "event" to render inapplicable the *Pearce* presumption of vindictiveness. In such a case, the district courts have been freed by *Booker* to consider sentences that otherwise would have been impermissible under the legal regime in force at the time of the original sentencing. *See, e.g., United States v. Reinhart,* 442 F.3d 857, 860 (5th Cir.2006) ("The district court's justification for the longer sentence is its freedom post-*Booker* to step beyond the guidelines range and impose any reasonable sentence. That justification is plainly a valid reason associated with the need for flexibility and discretion in the sentencing process." (internal quotation marks omitted)); *Goldberg,* 406 F.3d at 894.

Here, however, the District Court found—at the time of its initial pronouncement of sentence—that an upward departure pursuant U.S.S.G. § 5K2.4 was appropriate. It therefore was not required under the Guidelines to sentence Singletary within the otherwise-applicable mandatory Guidelines range of 27 to 33 months. Indeed, the relevant upward departure provision, U.S.S.G. § 5K2.4, does not specify by how much a district court may increase a defendant's sentence, and it therefore left the District Court in this case free to sentence Singletary to any term of imprisonment up to the twenty-year statutory maximum. Singletary thus argues that the District Court had as much discretion (pursuant to Section 5K2.4) at the initial sentencing as it had (pursuant to *Booker)* when it resentenced Singletary to a lengthier prison term. Accordingly, the argument continues, the imposition of a higher sentence on remand was presumptively vindictive. *Cf. Colten*

(rejecting *Pearce* presumption after defendant was reconvicted by a new jury and given a lengthier sentence than was originally imposed); *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (declin-

ing to apply presumption "when a prosecutor threatens to seek conviction on a greater offense if the defendant does not plead guilty and in fact does so when the defendant proceeds to trial").

*v. Kentucky,* 407 U.S. 104, 117, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (holding that no vindictiveness could be presumed when second sentence was imposed by a *different* judge than had imposed the original sentence, meaning the original judge was not being "asked to do over what [he] thought [he] had already done correctly").

While Singletary's argument is far from frivolous, we do not find it convincing. Instead, we find persuasive the reasoning of a recent opinion of the United States Court of Appeals for the Ninth Circuit, *see United States v. Bad Marriage,* 439 F.3d 534, 539 (9th Cir.2006) *("Bad Marriage II"),* cert. denied, —— U.S. ——, 126 S.Ct. 2958, —— L.Ed.2d —— (2006), in which the Court of Appeals considered for the second time an appeal of a sentence above the Guidelines range. In the original appeal, *United States v. Bad Marriage,* 392 F.3d 1103 (9th Cir.2004) *("Bad Marriage I"),* the Court of Appeals reversed the sentencing judge's upward departure, which the judge had imposed under U.S.S.G. § 4A1.3 because he concluded that defendant's criminal history category under the Guidelines did not adequately reflect the seriousness of his offenses. *Booker* was decided between *Bad Marriage I* and the district court's imposition of a new sentence. Freed on remand from the mandatory Guidelines, the district court imposed a non-Guidelines sentence greater than its original sentence. Rejecting defendant's argument that the greater sentence gave rise to a presumption of vindictiveness under *Pearce,* the Court of Appeals held that because *Booker* changed the underlying law between the original sentencing and the resentencing, and because the district court "fully explained" how its analysis changed in light of *Booker,* there was no " 'reasonable likelihood' that the increase in sentence [was] the product of actual vindictiveness on the part of the sentencing authority." *Bad Marriage II,* 439 F.3d at 539 (quoting *Alabama*

*v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (quoting *Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485)).

We recognize that the instant case differs from *Bad Marriage II* because U.S.S.G. § 4A1.3 provides guidance to sentencing judges with regard to the permissible degree of upward departure, whereas the provision at issue here, U.S.S.G. § 5K2.4, does not specify an appropriate degree of departure. Nevertheless, we conclude that the principle of *Bad Marriage II*—that no presumption of vindictiveness attaches where a sentencing judge explains why a defendant deserves a higher sentence under post-*Booker* sentencing law—applies equally well to this case.

We conclude that the presumption does not apply in this case because there is no reasonable likelihood that Singletary's increased sentence was the product of the sentencing judge's actual vindictiveness. Singletary consented to the government's motion to remand his case under *Fagans* to be resentenced in light of *Booker.* We granted the motion, and the instant appeal arises from the ensuing resentencing. We have no reason to suspect that Judge Larimer's imposition of a greater sentence after a routine *Fagans* remand resulted from a vindictive motive. Indeed, our instructions on remand were simply that the court resentence Singletary in conformity with the recently-issued *Booker* decision, an instruction given in several hundred cases as we have implemented the Supreme Court's ruling in *Booker.* The remand in Singletary's case was not a merits reversal of the District Court's sentencing determination. In addition, nothing in the record remotely suggests vindictiveness on the part of the District Court; Judge Larimer carefully explained the effect of *Booker* on his reasoning and why, upon review of the facts, the post-*Booker* sentencing law called for a higher sentence than the

District Court had originally imposed. We therefore have no difficulty in concluding that the "evil" that the *Pearce* presumption is intended to avert—enhanced sentences born of a sentencing judge's vindictiveness following a successful appeal—is simply not present in this case.

■ Furthermore, assuming *arguendo* that the presumption does apply, we are satisfied that the District Court's explanation of the higher sentence upon remand rebuts any potential presumption of vindictiveness. Here, the District Court stated at resentencing that it

felt cabined or restricted in some sense [at the original sentencing] because the Court felt it had to deal with the guidelines. And I think under the new framework, that is not necessarily the case. The guidelines are advisory, but Section 3553 also calls for the Court to consider the nature and characteristics of the offense, and the history and characteristics of the defendant.

After discussing on the record issues relating to the sentencing factors of 18 U.S.C. § 3553(a), *see ante*, at 4577–78, the District Court stated that "based on all of these factors … I am going to impose a non-guideline sentence. I don't think I'm restricted to just using the [U.S.S.G. § ] 5K2.4 guideline, but I think considering the factors that I have just recited, which was something courts did not do when the guidelines were mandatory, I think the sentence should be 54 months." Nothing in the record before us suggests that the District Court had any vindictive motive,[6]

and we decline to apply the presumption of vindictiveness to cases like this one, in which (1) *Booker* was decided between the original sentencing and the resentencing on remand[7] and (2) the sentencing judge provides a reasonable explanation for increasing the sentence.

## II. The Sentence Imposed on Remand Was "Reasonable"

■ We may, of course, review defendant's sentence for reasonableness regardless of whether there exists a presumption of vindictiveness. *See Booker*, 543 U.S. at 260–63, 125 S.Ct. 738. Upon a review of the record, we conclude that the sentence imposed by the District Court on remand was reasonable. As discussed above, the District Court explained its sentence on remand and demonstrated a thorough consideration of the relevant sentencing factors, and nothing in the record suggests that the District Court erred in resentencing defendant or that defendant's new sentence (principally of imprisonment for 54 months) was unreasonable.

## III. Judicial Factfinding After *Booker* Under the Advisory Sentencing Guidelines Does Not Violate the Sixth Amendment Right to Trial by Jury

■ Singletary argues, "in order to preserve [the issue] for future review," that the District Court violated his right to trial by jury under the Sixth Amendment when it based its sentence on facts there were not "found by a jury beyond a reasonable

6. We note as well that the defendant's attorney stressed at oral argument that he had no intention of suggesting that Judge Larimer was actually vindictive. Instead, he argued that, standing alone, the record itself *(i.e.,* the increase in sentence with no change in the facts before the District Court) created a presumption of vindictiveness, and that no claim, much less proof, of vindictiveness is necessary.

7. Although this case was remanded pursuant to *Fagans* because defendant preserved his claim of error before the District Court, we note that our conclusion would be the same were we to have remanded pursuant to *Crosby* for plain error review after a defendant failed to preserve his claim.

doubt" or admitted by Singletary. We reject Singletary's argument because it directly contradicts the holding of *Booker* that judicial factfinding is permissible—indeed, required—under an *advisory* Guidelines regime. *See Booker*, 543 U.S. at 245–46, 258–60, 125 S.Ct. 738; *Crosby*, 397 F.3d at 110–12. The Guidelines remain a robust component of federal sentencing law, and judicial factfinding in the calculation of the appropriate advisory Guidelines range is a necessary part of the sentencing process, even when, as in this case, the sentencing judge concludes that a non-Guidelines sentence is appropriate.

### CONCLUSION

In sum, we conclude that (1) in light of the District Court's reasonable explanation of the new, enhanced sentence, no presumption of vindictiveness is created by a sentencing judge's decision after a *Crosby* or *Fagans* remand to impose a longer non-Guidelines prison term than originally had been imposed pursuant to an upward departure when the Guidelines were mandatory; (2) the sentence ultimately imposed on this defendant was reasonable; and (3) as we have held before, judicial factfinding under the advisory Guidelines does not offend the Sixth Amendment. Accordingly, the judgment of the District Court is affirmed.